Filed 10/11/22 Richert. v. Colvin CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHIRLEY R. RICHERT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KERRY COLVIN,<br><br>Defendant and Appellant. | F082620<br><br>(Super. Ct. No. BPB-20-002505)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Kern County. Andrew Kendall, Commissioner.

Law Offices of Young & Nichols and Michael R. Young, for Defendant and Appellant.

Van Sciver Law and Kurt Van Sciver, for Plaintiff and Respondent.

-ooOoo-

Appellant Kerry Colvin (Colvin) appeals from a March 15, 2021 order of the Kern County Superior Court, sitting in probate, in which it determined it had personal jurisdiction over Colvin in connection with a petition for (1) breach of fiduciary duty; (2) removal of trustee; (3) accounting and (4) imposition of constructive trust (petition) brought by Colvin's sister, respondent Shirley R. Richert aka Teddy Richert (Richert).[1] We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

Except for certain procedural facts pertaining to the issues on appeal, the facts recited in this opinion are drawn primarily from allegations contained in Richert's verified petition and petition supplements; declarations from Richert and her counsel; documents contained, and authenticated in, the petition paperwork; and statements made by Colvin's counsel in briefing to this court.

### A. A Trust is Created by the Parties' Mother and Colvin

Colvin and Richert are the offspring of Shirley A. Arnold (mother). Mother had a third child, Albert R. Colvin, who is deceased.

On December 10, 2010, mother and Colvin, as trustors, created "The K. Colvin & S. Arnold Revocable Trust" (trust). Mother and Colvin each contributed to the trust their interests in separately-owned real property (separately-owned trust real property), and jointly-owned real property[2] (jointly-owned trust real property) (collectively, trust real property). The trustors also contributed miscellaneous personal property to the trust. Under the terms of the trust, their respective trust contributions were to "remain the separate property of each Trustor."

---

[1]     Colvin has filed a separate notice of appeal of a subsequent order issued by the Kern County Superior Court in this same matter. (*Richert v. Colvin*, F083141.)

[2]     The jointly owned trust real property is alleged to have been owned by mother and Colvin—each owning an "undivided one-half interest as tenants in common."

The trust further provided, "The Trustors shall be the Co-Trustees of this trust until the death, resignation, or incapacity of one of the Co-Trustors. Thereafter, the remaining or surviving Trustor shall be the Trustee of each [sub-]trust [created] hereunder until the death or incapacity of the surviving Trustor." The trust also provides, in part: "This trust shall be administered in the State of California and the validity, construction and all rights under this Declaration of Trust shall be governed by the laws of that state."

Mother and Colvin were the sole, vested beneficiaries of the trust during their joint lifetimes and, during that time, enjoyed the ability to apply both principal and income toward their respective benefits. The trust provided that, upon the death of either mother or Colvin, the assets of the trust were to be divided into two sub-trusts—Decedent's Trust A (consisting of assets contributed to the trust by the deceased trustor) and Survivor's Trust B (consisting of assets contributed to the trust by the surviving trustor). From that point forward, Decedent's Trust A would be "irrevocable and not subject to amendment."

Upon the deceased trustor's death and funding of Decedent's Trust A, the surviving trustor would be obligated to use assets of Decedent's Trust A to (1) distribute to the deceased trustor's designated beneficiaries any special gifts of tangible separate property duly made by the deceased trustor; and (2) pay "all expenses of last illnesses, funeral costs and other just debts of the deceased Trustor," along with all "attorney's fees, accountancy fees, taxes and all other necessary and reasonable costs and expenses that accrue to the trust by reason of the death of the deceased Trustor." Thereafter, the surviving trustee, during his or her lifetime, would continue to be entitled to use the income—but not the principal—from Decedent's Trust A for his or her own benefit.

Upon the death of the surviving trustee, the remaining assets of Decedent's Trust A would be distributed to persons designated in the trust instrument as beneficiaries

3.

of the first deceased trustor, and the assets of Survivor's Trust B would be distributed to persons designated in the trust instrument as beneficiaries of the surviving trustee.

Mother designated Richert as one of her beneficiaries.

## B. Allegations Concerning Administration of the Trust

During the first several years of the trust's existence, mother and Colvin served as co-trustees of the trust. At some unspecified point in time, mother was declared incompetent. On October 31, 2014, Colvin recorded an affidavit change of trustee in which he gave notice that mother was "no-longer able to act as a Co-Trustee," and that he consented to serve as sole trustee of the trust. Mother passed away several years later on July 30, 2019.

On June 29, 2020, Richert filed her petition alleging Colvin committed various violations of fiduciary duty by wrongfully converting trust assets to his own use and benefit. Richert seeks "remedies under Probate Code section 16420,[3] including repayment to the [trust] of all funds and other assets wrongfully taken"; removal of Colvin as trustee of the trust; an accounting of trust transactions and assets; a constructive trust over assets wrongfully converted; and an award of attorney's fees and costs.

Specifically, Richert alleges that (1) in 2015, Colvin, acting in his capacity as sole trustee of the trust, transferred title to certain jointly-owned trust real property to an entity known as Donated Investments. Richert was uncertain as to the amount of consideration received for the transfer but contends 50 percent of the consideration should have been transferred to Decedent's Trust A; (2) in 2018, Colvin transferred title to five of the trust real properties to himself, personally;[4] (3) in 2018, Colvin sold one of the jointly-owned

---

**3**      All statutory references are to the Probate Code unless otherwise noted.

**4**      Although a typographical error in the petition might otherwise cause uncertainty as to which five trust real properties Richert alleges Colvin transferred to himself, we presume she is referring to mother's separately-owned trust real property and the jointly-owned trust real property. The remaining trust real property was alleged to have already been owned by Colvin at the time the trust was created. Moreover, Colvin admits in his

4.

real properties to a third party for $250,000, 50 percent of which should have been transferred to Decedent's Trust A; and (4) in 2019, Colvin sold one of mother's separately-owned trust real properties to a third party. Richert alleges she did not know what happened to the proceeds from the sale, but all of those proceeds should have been transferred to Decedent's Trust A. Richert alleges, on information and belief, that Colvin "used funds from the Trust for the benefit, improvement, and maintenance of his real properties, to the detriment of the Trust." Richert further contends that when she raised the issue of the aforementioned transfers to Colvin, Colvin "purported to transfer the properties back to the Trust by way of a deed recorded December 12, 2019."

In his opening brief, Colvin admits that, at the time of mother's death, the trust contained two separately-owned trust real properties owned by mother (including one property located on Stockton Street in Bakersfield, California) and three jointly-owned Trust real properties in which mother had "an undivided one-half interest." Colvin further admits that after mother passed away, he "sold the Stockton Street property and several of the properties in which [mother] owned an undivided one-half interest." Colvin acknowledges that "[t]he net proceeds of sale received from the sale of the [aforementioned] properties [were] to be held in trust and not invaded by [him] or used by him as the beneficiary of the trust during his lifetime"; and that he "was only entitled to the net income earned on [mother's] assets, either in kind or cash."

C.    **Facts Central to the Issues on Appeal**

On September 23, 2020, Richert served Colvin with a copy of the petition and a "Notice of Hearing—Decedent's Estate or Trust" (notice of hearing) for a hearing on the petition. (Unnecessary capitalization omitted.) Service was by U.S. Postal Service mail

_____

opening brief that he sold one of mother's separately-owned trust real properties and "several" jointly-owned trust real properties.

and was directed to Colvin at his business address in Bakersfield, California. The hearing was set for October 23, 2020.

On October 21, 2020, Richert filed a supplement to her petition. In it, Richert alleges, among other things, that Colvin "absconded with the principal of [Decedent's] Trust A"; that she (i.e., Richert) is a remainder beneficiary of Decedent's Trust A; and that she "has standing to protect her vested interest in the trust corpus."

The next day, October 22, 2020, Richert filed a second supplement to her petition. Among the additional facts alleged in this second supplement to the petition was that there was "no pending probate[s] for [beneficiaries] Albert Colvin or Joseph Richert," and that said individuals' heirs "received notice."

On October 23, 2020, the hearing on the petition went forward. In the minute order that issued (October 2020 minute order), the probate court indicated Richert and her attorney were the only ones who appeared at the hearing, and that both stipulated to the matter being heard by Commissioner Andrew Kendall (commissioner). The court noted it was advised "the potential objecting party [i.e., Colvin] is being represented by Michael Young and may be residing in Thailand." The court ordered "that notice be given to Attorney Michael Young" and that Richert "re-notice the business address in Bakersfield and continue to investigate and give mail notice to the address in Thailand." The court also ordered "an accounting from the trust from [October 5, ]2014 to the date the order is issued" and directed Richert's counsel "to prepare [the] order after hearing and [to] give notice." The court continued the hearing to December 4, 2020, to determine the status of the accounting, and to "consider suspending or removing the trustee … if there is no appearance in court to explain the status of the accounting." The court issued an order to appear/order to show cause to Colvin indicating he was "to respond to the allegations and respond to the court's order to account."

6.

A formal order substantially conforming to the October 2020 minute order was entered on November 6, 2020 (November 2020 order).[5] A notice of entry of the November 2020 order dated November 11, 2020, was served on Colvin and other interested persons by U.S. Postal Service mail. However, the proof of service for the notice of entry was defective on its face—indicating it was mailed on November 5, 2020 (one day prior to entry of the order, and six days prior to the date the notice of entry was signed).

On December 1, 2020, Colvin filed and served a pleading entitled, "Objection Based on Lack of Personal Jurisdiction Over the Trustee" (objection to jurisdiction). (Unnecessary capitalization omitted.) In it, Colvin argued that he "is currently a permanent resident of the country of Thailand"; that Code of Civil Procedure section 415.20 "provides that a summons may be served by leaving a copy of the summons and complaint at the person's mailing address other than a United States Postal Service post office box"; that "[w]hen appropriate, in matters before the Probate Court, citations are issued by the Clerk of Court to replace a summons," citing sections 1240 through 1242; and that "[s]ince no citation was issued by the clerk of the court, no service was made upon [Colvin] by simply serving a copy of the petition upon his mailbox without the citation." Colvin asked the probate court for a finding "it has no personal jurisdiction over him as Trustee of the [trust]."

The December 4, 2020 hearing went forward. Neither Colvin nor his counsel appeared at the hearing. In its minute order of the same date, the probate court continued the matter to January 13, 2021, and issued an "[o]rder to appear/order to show cause [on that date] … why the [objection to jurisdiction] should not be dismissed for the failure to appear at [the] hearing." The court wrote, "[t]he Court does understand that the

---

[5] The starting date for the accounting period was changed from October 5, 2014, to October 10, 2014, to conform to the affidavit change of trustee recorded by Colvin upon assuming his charge as sole trustee of the trust.

objections are based on jurisdiction. However, the Court expects the attorney to appear or at least make a special appearance to litigate the issue of jurisdiction."

On December 30, 2020, Richert filed a reply to the objection to jurisdiction. In it, she argued that Colvin had "waived the issue of personal jurisdiction and the method of service" because he filed an "objection to personal jurisdiction" rather than "a motion to quash service of summons." She contended the objection to jurisdiction constituted a general appearance by Colvin. Richert also argued Colvin was served with the notice of hearing by serving Colvin at his business address, and that, under the Probate Code, this was sufficient to bring Colvin before the probate court.

On January 5, 2021, Colvin filed a response to Richert's reply brief. In it, he reiterated his contention that a citation takes the place of a summons under the Probate Code, and that the relevant statutes require proper service of the citation on him before the probate court can exercise personal jurisdiction over him.

On January 13, 2021, the probate court continued the case to January 29, 2021. On January 29, 2021, all parties appeared through counsel. A minute order issued on that date indicated that all parties and/or their counsel stipulated to the commissioner acting as temporary judge in the matter, and that the court took the matter under submission.

On March 15, 2021, the probate court issued the minute order that is the subject of this appeal (subject order). The court, relying on sections 17003 and 17004, denied Colvin's jurisdictional challenge. The court found that Colvin was properly served with the notice of hearing, and that the court had personal jurisdiction over him. The court ordered Colvin to produce the accounting previously ordered by no later than April 19, 2021. A further hearing to consider Richert's request to remove Colvin as trustee and other relief requested in her petition was set for April 29, 2021.[6]

---

[6] After a series of continuances, the hearing on Richert's request to remove Colvin as trustee went forward on July 14, 2021. At that hearing, the probate court suspended Colvin's powers as trustee of the trust, and a formal order to that effect was entered on

8.

On April 5, 2021, Colvin appealed the subject order.

**D.      Issues Raised on Appeal**

On appeal, Colvin reiterates the arguments raised in his objection to jurisdiction—contending Richert was required to serve him with a citation pursuant to sections 1240 through 1242 before the probate court could exercise personal jurisdiction over him. Colvin contends, without citation to authority, that Richert was required to have the citation served through the U.S. Embassy after having the paperwork translated from English into the Taiwanese[7] language.

Richert, on the other hand, contends subdivision (a) of section 17003 is sufficient to establish personal jurisdiction over Colvin. Section 17003 reads, "By accepting the trusteeship of a trust having its principal place of administration in this state the trustee submits personally to the jurisdiction of the court under this division." In addition, Richert reiterates her contentions before the probate court that (1) a citation under sections 1240 through 1242 is not required; (2) service of the notice of hearing on Colvin (along with a copy of the petition) was sufficient to bring Colvin before the probate court; and (3) Colvin waived his jurisdictional objection by filing the objection to jurisdiction (instead of a motion to quash), which constituted a general appearance by Colvin. Finally, Richert argues the subject order is not a final order and is not appealable.

---

July 16, 2021. Colvin has filed a separate notice of appeal of that order. (*Richert v. Colvin*, F083141.) On our own motion, we take judicial notice of the entire record in that case. (See Evid. Code, § 459 [judicial notice by reviewing court]; see also *Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 768, fn. 3.) The additional information contained in the record of the case No. F083141 is not considered of substantial consequence to the determination of this appeal.

[7]      Colvin's reference to the "Taiwanese" language is likely in error. We presume Colvin intended to reference the "Thai" language.

9.

In his reply brief, Colvin contends (without citation to the record) that the probate court "specifically found that the Law Offices of Young & Nichols in attempting to settle the case did not make a formal appearance, in response to [Richert's] petition but always took the position that it had no authority from [Colvin] to appear until he was properly served." Colvin also contends that Richert "had every opportunity to serve [Colvin] through his post office box[8] in Bakersfield, [California]" and, that, although Richert "did serve the petition by placing it in [Colvin's] P O Box," she "did not serve the citation (summons) along with the petition, [and] therefore, the service was no good."

## DISCUSSION

### I. Standard of Review

"When a nonresident defendant challenges personal jurisdiction, the burden shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that all necessary jurisdictional criteria have been met. The plaintiff can meet this burden only by the presentation of competent evidence in affidavits or declarations and authenticated documentary evidence. [Citation.] Affidavits or declarations consisting primarily of vague assertions of ultimate fact rather than specific evidentiary facts are not sufficient. [Citation.] Once the plaintiff has met the burden of demonstrating facts justifying the exercise of jurisdiction, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable." (*Paneno v. Centres for Academic Programmes Abroad Ltd.* (2004) 118 Cal.App.4th 1447, 1454 (*Paneno*).)

"We draw all reasonable inferences in support of the trial court's order. [Citation.] When the evidence conflicts, we defer to the trial court's factual findings when substantial evidence supports them. [Citations.] When evidence does not conflict, we

---

**8**     Colvin does not cite to the record in support of his contention that Richert attempted service on a "post office box," and we have found none. The proof of service for the petition and notice of hearing shows it was served at a Bakersfield, California address consisting of street address, suite number, and unit number.

10.

independently review both the record and the trial court's application of law to facts." (*Van Buskirk v. Van Buskirk* (2020) 53 Cal.App.5th 523, 530.)

Here, the evidence before the probate court consisted of verified allegations in Richert's petition and the supplements thereto, declarations of Richert and her counsel, and documents authenticated in the aforementioned pleadings.[9]  Colvin made no objection to the court's consideration of such evidence.  Consideration of the evidence was proper.  (*Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 620 (*Evangelho*) [noting an exception to the rule that "affidavits and verified petitions may not be considered as evidence at a contested probate hearing" where no objection to the evidence is made].)

## II.     The Objection to Jurisdiction Did Not Constitute a General Appearance

We first address Richert's contention that Colvin made a general appearance in the litigation.  Richert contends that "by filing an answer (which in the probate court is styled as an objection), [Colvin] submitted to the personal jurisdiction of the [probate court] and waived any issues with service of summons."  We disagree.

Richert does not cite to any authority for her contention that the filing of the objection to jurisdiction was tantamount to filing an answer or that it otherwise constituted a general appearance.  She concedes that, had Colvin filed a motion to quash service of summons, Colvin could not have been held to have made a general appearance in the proceedings.  Richert's concession is premised on Code of Civil Procedure section 418.10, which provides, in relevant part, a defendant "may serve and file a notice of motion … [¶]  (1) To quash service of summons on the ground of lack of jurisdiction of the court over him or her" and "no motion under this section … shall be deemed a

_____

[9]     Colvin's objection to jurisdiction was verified by his counsel, presumably due to the fact Colvin was absent from the country.  (Code Civ. Proc., § 446, subd. (a).)  The only factual matter stated therein is that Colvin is the trustee of the trust; that he is currently a permanent resident of the country of Thailand; and that no citation under section 1240, et seq., was issued by the clerk of the court.

general appearance by the defendant." (Code Civ. Proc., § 418.10, subds. (a)(1), (d).) "[T]he Legislature enacted section 418.10 'to permit a defendant specially to challenge the court's personal jurisdiction without waiving his right to defend on the merits by allowing a default to be entered against him while the jurisdictional issue is being determined.' " (See *Global Financial Distributors Inc. v. Superior Court* (2019) 35 Cal.App.5th 179, 190.)

Code of Civil Procedure section 418.10 applies to probate proceedings involving the internal affairs of a trust. (§ 1000, subd (a) ["Except to the extent that [the Probate Code] provides applicable rules, the rules of practice applicable to civil actions … apply to, and constitute the rules of practice in, proceedings under [the Probate Code]."]; Judicial Council of Cal., com., reprinted at Deering's Ann. Code Civ. Proc. (2016 ed.) foll. § 418.10 [motion may be direct to "quash the summons *or other process*," italics added]; *McClatchy v. Coblentz, Patch, Duffy & Bass, LLP* (2016) 247 Cal.App.4th 368, 371, 375-376 [affirming order granting motion to quash in connection with service of petition brought pursuant to section 17200].)

Richert's argument that the objection to jurisdiction constituted an answer to the petition and a general appearance appears to be based on the name Colvin gave to his pleading, rather than on its substance. The argument is not persuasive. " 'The name of a motion is not controlling.' " (*J.W. v. Watchtower Bible & Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1171; *City of Sana Maria v. Adam* (2019) 43 Cal.App.5th 152, 162.) " 'The nature of a motion is determined by the nature of the relief sought, not by the label attached to it.' " (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 193.)

" 'It is the well-settled rule that if a party defendant raises any question other than that of jurisdiction or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general …. [Citations.] If a party defendant wishes to insist upon the objection that he is not in court for want of

jurisdiction over his person, he must specially appear for that purpose only, and must keep out for all other purposes except to make that objection.' " (*MacPherson v. Superior Court of Los Angeles County* (1937) 22 Cal.App.2d 425, 430-431.)

Here, Colvin's intent in filing the objection to jurisdiction is unmistakable. The relief he sought from the probate court was limited to a judicial determination that he had not been properly served with process (i.e., a citation in lieu of a summons) and that, consequently, the court did not obtain personal jurisdiction over him. His objection to jurisdiction was substantively equivalent to a motion to quash service of process.

We conclude Colvin did not make a general appearance by filing the objection to jurisdiction.

## III.    The Subject Order is an Appealable Order

### A.    *The Parties' Contentions*

Richert also contends the subject order is not appealable. We disagree.

Richert correctly notes that Colvin, in his opening brief, failed to "explain why the [subject] order appealed from is appealable" in violation of California Rules of Court, rule 8.204.[10] Richert contends the subject order is not an appealable order under sections 1300 or 1304, and is not a final order of a petition brought pursuant to section 17200. She contends the subject order "did not adjudicate the merits of the petition, but merely decided the merits of Colvin's objection that the probate court lacked personal jurisdiction."

In his reply brief, Colvin counters Richert's contention with a two-sentence response that reads:

---

**10**     California Rules of Court, rule 8.204(a)(2)(B) provides, in relevant part: "An appellant's opening brief must: [¶] … [¶] … State that the judgment appealed from is final, or explain why the order appealed from is appealable." Colvin's opening brief does neither.

13.

"[Richert] claims that the [subject order] by the Probate Court is not appealable on page 8 of the Respondent's Brief. The [subject order] is appealable as stated in … [section] 1304 [(a)](1) which states that appealable orders include compelling the Trustee to submit an accounting."

Colvin's argument for appealability is undeveloped and insufficient. Were we to consider the argument solely on its face, we would be compelled to reject it due to its patent inadequacy. "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument … allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*).)

Despite this failure, we will exercise our discretion and further consider Colvin's contention that the subject order is appealable.

## B.     The Subject Order Is Appealable Under Sections 1304 and 17200

"[T]he California Supreme Court has repeatedly held that the right to appeal is wholly statutory." (*Barnes v. Litton Systems, Inc.* (1994) 28 Cal.App.4th 681, 683 (*Barnes*) [citing numerous cases]; *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 (*Dana Point*) ["The right to appeal is wholly statutory."].) "[T]here is no federal or state constitutional right to appeal." (*Barnes*, at p. 682.)

"The existence of an appealable order or judgment is a jurisdictional prerequisite to an appeal." (*Canandaigua Wine Co., Inc. v. County of Madera* (2009) 177 Cal.App.4th 298, 302.) As a general rule, "if the order or judgment is not appealable, the appeal must be dismissed." (*Ibid*.)

### 1.     Code of Civil Procedure Section 904.1

"Code of Civil Procedure section 904.1 lists appealable judgments and orders. Chief among them is a 'judgment' that is not interlocutory, e.g., a final judgment. [(Code Civ. Proc., § 904.1, subd. (a)(1).)] A judgment is the final determination of the rights of the parties [citation] ' "when it terminates the litigation between the parties on the merits

14.

of the case and leaves nothing to be done but to enforce by execution what has been determined.' " ' " (*Dana Point*, *supra*, 51 Cal.4th at p. 5, fn. omitted.)

Here, the subject order does not resolve all issues raised by the petition. Richert's claims for breach of fiduciary duty, for permanent removal of Colvin as trustee of the trust, and for imposition of a constructive trust have yet to be adjudicated by the probate court. Consequently, the subject order is not a final judgment or order as contemplated by subdivision (a)(1) of Code of Civil Procedure section 904.1.

Code of Civil Procedure section 904.1 lists additional orders that are considered appealable under California law. In that regard, Richert notes that an order *granting* a motion to quash service of summons *is* an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(3).) She contends, however, that an order *denying* a motion to quash service of summons is not appealable, citing *Muller v. Reagh* (1957) 148 Cal.App.2d 157, 163. Notably, other cases have held similarly. (See, e.g., *ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 212-213 [determining order denying motion to quash was not appealable but opting to treat the appeal as a writ petition]; *Northern Natural Gas Co. v. Superior Court* (1976) 64 Cal.App.3d 983, 995 ["When a trial court erroneously denies a motion to quash service of summons made on the ground that the court has no personal jurisdiction over the moving party, mandamus is the appropriate remedy to review the erroneous ruling."]; *Owens v. Superior Court* (1959) 52 Cal.2d 822, 827 [same]; *Saroff v. Saroff* (1944) 66 Cal.App.2d 330, 333-334 [order denying motion to quash not appealable]; see also Code Civ. Proc., § 418.10 [providing that appellate review may be sought by petition for writ of mandate].)

The only other potential basis for appellate jurisdiction of the subject order is if it is made appealable by a provision in the Probate Code. In that regard, subdivision (a)(10) of Code of Civil Procedure section 904.1 authorizes an appeal "[f]rom an order made appealable by the Probate Code or the Family Code." (Code Civ. Proc., § 904.1, subd. (a)(10).)

15.

## 2. *Orders Made Appealable by the Probate Code*

Section 1304 provides:

> "With respect to a trust, the grant or denial of the following orders is appealable: [¶] (a) Any final order under Chapter 3 (commencing with Section 17200) of Part 5 of Division 9, *except* the following: [¶] (1) Compelling the trustee to submit an account or report acts as trustee." (Prob. Code, § 1304, subd. (a)(1), italics added.)

The language of the provision, on its face, appears diametrically opposed to Colvin's contention. Subdivision (a) of section 1304 provides that, *except for an order compelling a trustee to account*, or an order accepting a trustee's resignation, "[a]ny final order under Chapter 3 (commencing with Section 17200) of Part 5 of Division 9" is appealable. (§ 1304, subd. (a).) As discussed further below, there are recognized exceptions to section 1304 which, when applied, authorize the appeal of an order to account.

First, however, we draw a distinction between a "final order" as referenced in subdivision (a) of section 1304, and a "final judgment" as that term is used in the context of subdivision (a) of Code of Civil Procedure section 904.1. As discussed above, a final judgment results when there has been a final determination of the rights of the parties and nothing remains to be done except for enforcement of the judgment. (*Dana Point, supra,* 51 Cal.4th at p. 5.) No such requirement exists for a final *order* under section 1304.

Rather, " '[t]he administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final.' " (*Estate of Callnon* (1969) 70 Cal.2d 150, 156.) Thus, a probate order may fall within the scope of an appealable order under section 1304 even though disputes between the parties remain pending. (See, e.g., *Gridley v. Gridley* (2008) 166 Cal.App.4th 1562, 1586-1587 [order deciding scope of arbitrator's authority in probate matter to adjudicate 11 causes of action held "final" under § 1304, subd. (a), even though remaining matters had not yet been adjudicated].) Moreover, to hold that a final order must be equivalent to a final judgment would render

16.

subdivision (a) of section 1304 superfluous in that *final judgments* are already made appealable under Code of Civil Procedure section 904.1.

On the other hand, if the probate order in question only provisionally decides a matter embraced by the subject of the order, it is not "final" as that term is used in section 1304. (*Aviles v. Swearingen* (2017) 16 Cal.App.5th 485, 492 [order removing trustee pendente lite is not appealable].) With this distinction in mind, we next examine case law that holds an order compelling a trustee to account, under certain circumstances, is an appealable order under subdivision (a) of section 1304.

In *Evangelho*, beneficiaries of a trust sought an order compelling the trustee to account and to redress alleged breach of trust. (*Evangelho*, *supra*, 67 Cal.App.4th at p. 621.) The trial court found the beneficiaries "had the right as beneficiaries to petition for an accounting of the trust estate, and then it granted the petition for an accounting." (*Id*. at p. 622.) On appeal by the trustee, the *Evangelho* court wrote: "A reading of section 1304 … , would lead to the conclusion that the appeal is premature. Until the accounting is made and the order sustaining objections or approving the accounting is entered, there is no appealable order." (*Ibid*.) The trustee argued, however, that "the issue is broader than the order of a mere accounting," and that "the court's order could not compel an accounting" because the asset in question was "an asset separate and distinct from the trust." (*Ibid*.) The *Evangelho* court agreed and entertained the appeal.

In *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517 (*Esslinger*), the probate court issued an order requiring the trustee of a trust to account to a remainder beneficiary of the trust. (*Id*. at pp. 520-521.) The trustee appealed. (*Id*. at p. 521.) The remainder beneficiary then "moved to dismiss the appeal on the ground an order directing a trustee to account is not appealable." (*Id*. at p. 522.) The appellate court denied the motion to dismiss the appeal. (*Ibid*.)

In denying the motion to dismiss the appeal, the *Esslinger* court wrote: "An order to account is appealable when it expressly or implicitly decides other issues that could be

17.

the subject of an appealable probate order." (*Esslinger*, *supra*, 144 Cal.App.4th at p. 522.) The court concluded the order to account "necessarily determined [the remainder beneficiary] had the power or right to request an accounting." (*Id.* at p. 523.) The court held that "[a]n order determining the existence of a power, duty, or right under a trust is appealable," citing sections 1304, subdivision (a) and 17200, subdivision (b)(2), and determined the order compelling the trustee to account was appealable. (*Ibid.*)

The situation here is not much different from that presented in *Esslinger*. In her petition, Richert, a remainder beneficiary, requested that the probate court order Colvin to account. Subject to certain exceptions, however, a trustee is only required to account "to each beneficiary to whom income or principal is required or authorized in the trustee's discretion *to be currently distributed*." (§ 16062, subd. (a), italics added.) One such exception is described in *Esslinger* as follows: "[U]nder … section 16061, a remainder beneficiary may make a written request to the trustee for information. If the trustee does not comply with a reasonable request within 60 days after that request, and no report or account had been made within the six months preceding the remainder beneficiary's request, then a remainder beneficiary may petition the court under … section 17200, subdivision (b)(7), to compel the trustee to report information about the trust or to account." (*Esslinger*, *supra*, 144 Cal.App.4th at p. 525.) The *Esslinger* court held that under such circumstances, a probate court may order an accounting, and that such an order is appealable. (*Id.* at pp. 523, 525-526.)

The subject order required Colvin to account in response to Richert's petition. In so ordering, the probate court necessarily determined that Richert, in her capacity as a remainder beneficiary, had a right to an accounting. The order is final in this regard. As such, we conclude the order is appealable under sections 1304, subdivision (a) and 17200, subdivision (b)(7).[11]

_____

[11]    The fact that Colvin did not actually challenge Richert's standing to seek an accounting at the probate court level or on appeal is of no moment. Colvin may

18.

**IV.    A Citation Was Not Required, Notice Was Properly Given, and Personal Jurisdiction Over Colvin Was Established**

### A.    *A Citation Was Not Required to Bring Colvin Before the Court*

Colvin contends Richert must obtain, and serve him with, a citation under sections 1240 through 1242 in order for the probate court to exercise personal jurisdiction over him.  We disagree.

Section 1240 provides:  "Where use of a citation is authorized or required by statute, a citation may be issued by the court clerk on the application of any party, without a court order, except in cases where an order is expressly required by law."

Colvin has not provided this court with any statutory authority requiring or authorizing the use of a citation for claims such as those stated in the petition.  "We are not bound to develop appellants' arguments for them.  [Citation.]  The absence of cogent legal argument … allows this court to treat the contentions as waived."  (*Falcone*, *supra*, 164 Cal.App.4th at p. 830.)  Notwithstanding, we have reviewed numerous statutes that authorize or require the use of a citation (or summons) in the context of probate proceedings and have found none which apply to the causes of action stated in the petition.[12]

---

challenge the subject order in its entirety by asserting the probate court lacked personal jurisdiction over him.  If a court lacks personal jurisdiction over a defendant, any resulting judgment or order is void.  (*In re Estate of Estrem* (1940) 16 Cal.2d 563, 570; *Caldwell v. Coppola* (1990) 219 Cal.App.3d 859, 865; *Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1250.)

[12]    Situations where the use of a probate citation is required or authorized by statute include:  (1) certain situations involving or affecting guardianship and conservatorship proceedings (§§ 1823, 1848, 2616, 2619, 2620.2, 3080 & 3130); and (2) certain situations involving or affecting the administration of a decedent's estate by a personal representative (§§ 8500, 8870, 8873, 8941, 11051, 12202).

Additional situations requiring the use of a summons in probate proceedings include:  (1) litigation against a decedent who is covered by insurance (§ 552); (2) certain situations involving or affecting the administration of a decedent's estate by a personal representative (§§ 8250, 8271, 8574 & 8575); (3) proceedings to determine whether

## B. The Exercise of Personal Jurisdiction Over Colvin is Consistent with Constitutional Principles

Section 17003 reads: "By accepting the trusteeship of a trust having its principal place of administration in this state the trustee submits personally to the jurisdiction of the court under this division." Section 17004 reads: "The court may exercise jurisdiction in proceedings under this division [i.e., the Trust Law] on any basis permitted by Section 410.10 of the Code of Civil Procedure."

Code of Civil Procedure section 410.10 provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." "This section manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. [Citations.] As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident individual so long as he has such minimal contacts with the state that '…the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.' " (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445.)

"Personal jurisdiction may be either general or specific. [Citation.] A nonresident defendant is subject to the forum's general jurisdiction where the defendant's contacts are ' "substantial … continuous and systematic." ' " (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 265 (*Thomson*).) Here, the record does not include sufficient facts to establish general jurisdiction over Colvin. Accordingly, we next consider whether specific jurisdiction over Colvin has been established.

Specific jurisdiction may be found where "(1) ' "the defendant has purposefully availed himself or herself of forum benefits" ' with respect to the matter in controversy, (2) ' "the 'controversy is related to or "arises out of" [the] defendant's contacts with the

transferees and other persons must pay prorated tax amounts (§§ 20122-20123, 20222-20223); (4) service issues involving creditor claims (§§ 9252, 9354, 19255).

20.

forum,' " ' and (3) the exercise of jurisdiction would comport with fair play and substantial justice." (*Thomson*, *supra*, 113 Cal.App.4th at p. 266.)

As to the first requirement for specific jurisdiction, the trust expressly states it is to be administered in California. As mentioned, section 17003 provides that a trustee "submits personally to the jurisdiction" of the court upon "accepting the trusteeship of a trust." Colvin accepted his charge as trustee of the trust. Moreover, he has conducted a variety of transactions in the state with reference to the trust real property. There is no evidence in the record to suggest the business of the trust was administered in any other jurisdiction. As a result, we conclude Colvin has purposefully availed himself of the forum state's benefits by virtue of his acceptance of the trusteeship of the trust and his administration of the trust within the state.

The second requirement for specific jurisdiction has undoubtedly been met. Richert's petition directly relates to Colvin's conduct as trustee of the trust. The trust has been administered in the state and, in that regard, Colvin has conducted substantial trust business in the state by managing, selling, and/or conveying title to the trust real property—all of which are situated in California. We conclude the controversy at hand arises out of Colvin's contacts with the forum.

As to the third and final requirement for specific jurisdiction, i.e., whether exercising jurisdiction over Colvin comports with fair play and substantial justice, we must consider whether it is reasonable for the forum state to exercise jurisdiction over Colvin. (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 292 (*World-Wide Volkswagen*); *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268.) The question is whether a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (*World-Wide Volkswagen*, at p. 297; *Vons Companies, Inc. v. Seabest Foods, Inc*. (1996) 14 Cal.4th 434, 464 (*Vons*).)

Here, mother and Colvin, in establishing the trust, chose to expressly state it would be administered in California. Mother, who has since passed away, relied on this provision in establishing the trust, and there is nothing in the record to suggest that the administration of the trust has been transferred to another jurisdiction pursuant to section 17401. Colvin maintained a business address in the state all the way up until just after Richert served her petition and notice of hearing on Colvin by mail. From the proofs of service filed in this matter, it appears the large majority of beneficiaries of the trust reside in the state. Finally, as mentioned, all of the trust real property is situated in the state. Based on these factors, we conclude Colvin should have reasonably anticipated being brought before the California courts in connection with trust-related matters. The probate court's exercise of jurisdiction over Colvin comports with fair play and substantial justice.

Other factors to consider include a consideration of the "forum state's interest in adjudicating the claim, the [petitioner's] interest in convenient and effective relief within the forum, judicial economy, and 'the "shared interest of the several States in furthering fundamental substantive social policies." ' " (*Vons*, *supra*, 14 Cal.4th at p. 448.) Here, these factors further support the probate court's exercise of personal jurisdiction over Colvin. California has an interest in adjudicating claims concerning trusts administered within the state, claims involving real property located within the state, and providing its citizens with relief in connection with all such matters. Moreover, the trust is to be governed under the laws of California. No state is better situated to interpret and apply the laws of the state.

Thus, we conclude the exercise of jurisdiction over Colvin, as a general matter, is consistent with constitutional principles.

### 3. *The Notice Provisions in the Probate Code Satisfy Constitutional Due Process Concerns*

We also consider whether the notice received by Colvin satisfies constitutional due process principles. Here, the petition seeks an order compelling Colvin to reimburse the trust "of all funds and other assets wrongly taken"; and award of attorneys' fees and costs; and other relief. Before a person may be deprived of property, he is entitled to due process. (*Menefee & Son v. Department of Food & Agriculture* (1988) 199 Cal.App.3d 774, 781.) "[A]t a minimum, due process requires notice and an opportunity for a hearing." (*Ibid.*)

"Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.] The means employed to give a party notice for due process purposes must be such as one, desirous of actually informing the party, might reasonably adopt to accomplish it." (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247.) Notice must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (*AO Alfa-Bank v. Yakovlev* (2018) 21 Cal.App.5th 189, 203.)

"If a notice or other paper is required to be served or otherwise given and no other manner of giving the notice or other paper is specified by statute, the notice or other paper shall be delivered pursuant to Section 1215." (§ 1217.) "At least 30 days before the time set for the hearing on [a petition concerning the internal affairs of a trust], the petitioner shall cause notice of hearing to be delivered pursuant to Section 1215 to all of the following persons: [¶] (1) All trustees." (§ 17203, subd. (a)(1).) Section 1215 provides, in part: "Unless otherwise expressly provided, a notice or other paper that is required or permitted to be delivered to a person shall be delivered pursuant to one of the following methods: [¶] (a) Delivery by mail." (§ 1215, subd. (a).) The notice must be mailed "[b]y first-class mail if the person's address is within the United States. First-

23.

class mail includes certified, registered, and express mail." (§ 1215, subd. (a)(1)(A).) Where the person's address is known, the notice "shall be addressed to the person at the person's place of business or place of residence." (*Id*. at subd. (a)(3).) "Delivery by mail is complete when the notice or other paper is deposited in the mail. The period of notice is not extended." (*Id*. at subd. (a)(4).)

Here, Richert submitted a declaration in which she indicated she has "been in contact with [her] brother Kerry Colvin for many years with respect to the residences that he leases and manages in Bakersfield. Kerry Colvin has used the mailbox where he was served for a significant period of time to conduct the business of leasing properties and the trust administration." She further indicated that since Colvin has been in Thailand, Colvin had his friend and property manager for the leased properties, Terry Fletcher, pick up mail at the address where Colvin was served, and that, after Colvin had been served, Mr. Fletcher contacted Richert's husband to discuss the petition. In addition, the proof of service for the notice of hearing and petition indicates it was served by mail on September 23, 2020, for a hearing date of October 23, 2020, thereby satisfying the 30-day notice requirement in section 17203.

Thus, substantial evidence exists to demonstrate that (1) Colvin was properly served with the notice of hearing and petition at his business address at least 30 days prior to the hearing; (2) the notice was reasonably designed to provide Colvin with actual notice; and (3) actual notice was accomplished through Colvin's agent, Terry Fletcher.

Richert met her burden of demonstrating that all jurisdictional criteria necessary to establish personal jurisdiction over Colvin have been met. As a result, the burden shifted to Colvin to demonstrate the exercise of jurisdiction over him would be unreasonable. (See *Paneno*, *supra*, 118 Cal.App.4th at p. 1454) Colvin has not submitted any evidence to suggest jurisdiction over him would be unreasonable.

We conclude the probate court had personal jurisdiction over Colvin when it issued the subject order.

24.

**V.    Other Grounds, If Any, for Challenging the Subject Order Have Been Forfeited**

"The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) "An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong…. It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).)

Because Colvin limited his appeal of the subject order to challenging the probate court's personal jurisdiction over him, he has not presented this court with any additional grounds upon which to challenge the subject order. Accordingly, if any such grounds existed, they have been forfeited. (*Benach*, *supra*, 149 Cal.App.4th at p. 852; *Falcone*, *supra*, 164 Cal.App.4th at p. 830.)

## DISPOSITION

The subject order is affirmed. Costs on appeal are awarded to Richert.

SMITH, Acting P. J.

WE CONCUR:

SNAUFFER, J.

DE SANTOS, J.

25.